IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) 2:03-cr-00174 |
| | ) |
| DON RAOUL HOUGH, | ) |
| | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Defendant Don Raoul Hough, first *pro se* and now via appointed counsel, seeks to vacate his sentence pursuant to 18 U.S.C. § 2255. (ECF Nos. 193, 241). He argues that he is entitled to federal *habeas corpus* relief on two bases: first, that the original sentencing court allegedly committed a "sentencing error" in violation of *United States v. O'Brien*, 560 U.S. 218, 235 (2010); and second, that later in his case his counsel was ineffective in failing to file an appeal of his resentencing decision despite his alleged explicit request that she do so. (ECF Nos. 193, 241). While awaiting a decision on his *habeas* motion, Mr. Hough has also filed, *pro se*, a Motion for Release from Custody seeking release on bail pending the disposition of the underlying motion. (ECF No. 332). The Court addresses those Motions here.

As set forth below, Mr. Hough's *O'Brien* claim is procedurally barred such that his claim for relief on the grounds of a "sentencing error" at his original sentencing must be denied. However, because the Court concludes that the record now before the Court is not fully developed as to whether (or not) Mr. Hough expressly requested resentencing counsel to appeal his resentencing decision (or perhaps more precisely, whether resentencing counsel was aware of such a request), the Court does not, at this procedural stage, resolve the pending Motion in full, as Mr.

1

Hough's claim of ineffective assistance of counsel remains live on that limited basis, e.g. limited to the issue of his alleged request for an appeal. In supplementation of the record, Defendant's resentencing counsel will be required to supplement the record regarding Mr. Hough's asserted request that an appeal of his resentencing to be filed. Further, because Mr. Hough has neither demonstrated that he has a high probability of success on his *habeas* petition nor that extraordinary or exceptional circumstances exist in his case, he is not entitled to release on bail pending a final decision on his Motion to Vacate.

For the reasons that follow, the Defendant's Motion to Vacate is DENIED IN PART as to all of his various "sentencing error" claims (no matter how he denominates them), but further disposition of the balance of that Motion, more specifically as limited to his claim regarding his asserted request that counsel file an appeal of his resentencing on his behalf, is held in abeyance pending further development of the record as set forth in this Opinion, and Defendant's Motion for Bail is DENIED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mr. Hough was sentenced to 600 months, or 50 years, imprisonment on July 13, 2005 by a former Judge of this Court (Hon. Terrence McVerry) after a jury found Hough guilty on all counts of a five-count indictment including charges of possession of a firearm during a drug trafficking crime, possession of a firearm by a convicted felon, and possession of an unregistered destructive device. (ECF No. 150, p. 4). The 600-month sentence included a 360-month (30 years) term at Count 3, for possession of a firearm during a drug trafficking crime in violation of 18 U.S.C.A. § 924(c), a sentence running consecutively with the 240 months (20 years) imprisonment imposed for the remainder of the counts of conviction. (*Id.*).

A little over ten years into his sentence, on July 27, 2016, Mr. Hough moved *pro se* to vacate his sentence under 28 U.S.C. § 2255. (ECF No. 163).[1] Mr. Hough then filed a Motion to Appoint Counsel to represent him on his *habeas* motion, (ECF No. 165), which the Court granted, appointing Assistant Federal Public Defender Sarah Levin as counsel for the purpose of filing a counseled supplement the § 2255 petition. (ECF No. 168). Ms. Levin promptly filed a motion on August 22, 2016 seeking to stay the proceedings pending the Third Circuit's resolution of Mr. Hough's pending application to the Circuit to file a second or successive § 2255 motion. (ECF No. 169). At that time, the Third Circuit had placed a temporary stay upon all § 2244 applications involving claims under *Johnson v. United States*, 576 U.S. 591 (2015), pending the Supreme Court's decision in *Beckles v. United States*, 580 U.S. 256 (2017). Because Mr. Hough's § 2255 motion involved a claim under *Johnson*, the Court granted the stay. (ECF No. 172).

The Supreme Court issued its decision in *Beckles* on March 6, 2017. As a result, on May 26, 2017, the Third Circuit issued an order lifting the stay on Mr. Hough's petition and granting his application for a second or successive § 2255 petition. (ECF No. 173). The Circuit reasoned that, without speaking to the merits of Mr. Hough's claim, following *Beckles*, Mr. Hough's claim under *Johnson* satisfied the gatekeeping requirements of § 2255 such that he was permitted to file a second or successive *habeas* petition. (*Id.*).

Mr. Hough's § 2244 application having been granted, Ms. Levin filed an amended Motion to Vacate on December 26, 2017. (ECF No. 182). At that stage, the Government, instead of responding to Ms. Levin's amended Motion, filed a joint motion with defense counsel seeking to resolve the § 2255 motion by stipulating to an amended sentence. (ECF No. 187). Both parties

---

[1] Mr. Hough's 2016 *habeas* petition was his second such petition. His first § 2255 petition was filed *pro se* on July 3, 2008 (ECF No. 141) and denied by Judge McVerry on January 8, 2009 (ECF No. 150). Mr. Hough appealed the decision (ECF No. 151), and the Third Circuit denied his request for a certificate of appealability (ECF No. 162).

agreed that, based on intervening developments in the law, Mr. Hough no longer qualified as an Armed Career Criminal pursuant to 18 U.S.C. § 924(e) and, as such, his sentence was no longer appropriate. (*Id.* at 2). The parties proposed that Mr. Hough be resentenced to 120 months, or 10 years, concurrently at each of Counts 1, 2, and 4, reducing his overall sentence to 40 years. (*Id.* at 3). The agreement stated that the consecutive 360-month sentence of imprisonment at Count 3, as well as the 120-month concurrent sentence at Count 5, would remain unchanged. (*Id.*). The Court accepted the stipulation and amended Mr. Hough's sentence to 120 months at Counts 1, 2, 4, and 5, to run concurrently with one another, and 360 months at Count 3 to run consecutively to the sentence at the other counts. (ECF No. 188, 189). The amended sentence thus resolved Mr. Hough's then-pending § 2255 petition. In light of those proceedings, and the multitude of lawyers Mr. Hough has had representing him (at the time of the publishing of this Opinion, eleven lawyers in all), for ease of reference, Ms. Levin will at times be referred in this Opinion to as "resentencing counsel."

On March 7, 2019, Mr. Hough filed, *pro se*, an entirely new § 2255 motion seeking, yet again, to vacate his sentence. (ECF No. 193).[2] The bases for this motion were twofold: first, the alleged unlawfulness of his 360-month sentence at Count 3; and second, the alleged ineffective assistance of his counsel on the prior § 2255 petition for failing to appeal the Court's amended sentencing judgment. (*Id.*). Mr. Hough also moved for the appointment of counsel. (ECF No. 194). That motion was granted, and the Court initially appointed Ms. Levin as counsel given that she had served as counsel on the prior § 2255 motion. (ECF No. 199). However, because Mr. Hough's petition involved a claim as to the ineffectiveness of Ms. Levin as his counsel at resentencing, Ms.

---

[2] As explained at n.1, Mr. Hough had at this point filed two petitions under § 2255; his 2019 petition is thus his third attempt to vacate his sentence under the section.

Levin and the Federal Public Defender's Office filed a Motion to Withdraw citing the potential for a conflict of interest. (ECF No. 225). The Court granted the motion, (ECF No. 226), and appointed a new attorney via the Court's CJA panel.[3] That attorney filed a counseled supplement to Mr. Hough's original petition, which remains the operative Motion. (ECF No. 241). The Government filed its response, (ECF No. 266), and Mr. Hough's counsel filed a reply, (ECF No. 304). The Government then filed a supplemental brief, citing to changes in the law, (ECF No. 317), and Mr. Hough's counsel filed a supplemental brief on his behalf (ECF No. 322).

Determining that Mr. Hough's petition contained sufficient factual allegations such that it was not conclusively clear from the files and records of the case that Mr. Hough was entitled to no relief whatsoever, the Court held a hearing on the petition via videoconference on November 29, 2022, with Mr. Hough on the video from the federal prison where he was then, and is currently, incarcerated. (ECF No. 327). After hearing oral arguments from both parties, the Court recessed the hearing subject to further Order of the Court. (ECF No. 331, p. 84). That hearing remains in recess to date.

Then, on May 25, 2023, Mr. Hough filed *pro se*—despite his being represented by counsel, and hybrid representation being prohibited by this Court—a motion seeking release on bail

---

[3] Attorney James Brink was first appointed counsel on May 29, 2020. (ECF No. 227). Mr. Brink filed a counseled supplement on June 19, 2020. (ECF No. 229). However, Mr. Hough soon resumed filing documents *pro se*, some seeking to terminate Mr. Brink as his counsel. Mr. Brink moved to withdraw, citing Mr. Hough's insistence that he do so, on November 2, 2020. (ECF No. 254). The Court granted the motion and appointed Attorney Michael DeRiso as substitute counsel on December 1, 2020. (ECF Nos. 260, 262). Mr. Hough quickly filed a motion seeking to terminate Mr. DeRiso as his counsel. (ECF No. 269). After a hearing in open court on April 14, 2021, the Court granted the motion and permitted Mr. DeRiso to withdraw. (ECF No. 277). Mr. Hough then moved yet again for the appointment of counsel. (ECF No. 280). The Court granted the motion on November 16, 2021, appointing Attorney Robert Carey as counsel for the purpose of the pending *habeas* petition. (ECF No. 281). While Mr. Carey to date remains Mr. Hough's appointed counsel, Mr. Carey has filed two Motions to Withdraw (ECF Nos. 305, 319) and Mr. Hough has filed a motion seeking to terminate his representation (ECF No. 309); all such motions were denied by the Court. It appears to the Court that Mr. Hough, being a prolific *pro se* filer, has a pattern of asking this Court to appoint counsel, then disagreeing with some aspect of counsel's advice or assessment of his claims, and then seeking to terminate that counsel and proceed either pro se or, more recently, with the assistance of yet another new counsel. The docket reflects that Mr. Carey is Hough's *eleventh* lawyer in this case.

5

pending the resolution of his *habeas* petition, citing the length of time that had elapsed since the filing of his petition. (ECF No. 332). The Government responded to the motion, (ECF No. 334), and Mr. Hough replied, (ECF No. 338). Both matters having been fully briefed by both parties, they are now ripe for the Court's review.

## DISCUSSION

### I.    Motion to Vacate

Mr. Hough seeks to vacate his sentence, pursuant to 28 U.S.C. § 2255[4], on two separate grounds. First, he argues that his 30-year sentence at Count 3 is unlawful. (ECF No. 241, p. 9). Second, he claims that he received ineffective assistance of counsel on his original § 2255 petition because, he alleges, counsel failed to file an appeal from the resentencing judgment despite his affirmative request that she do so. (*Id.* at 31). For the reasons set forth below, the Court concludes that Mr. Hough's first claim is procedurally barred such that it may not proceed, but that the resolution of Mr. Hough's second claim requires further record development from previous counsel before the Court can resolve that issue. The Court will address each claim in turn.

### A.  Mr. Hough's *O'Brien* claim is procedurally barred.

Mr. Hough claims that the sentencing court committed a "sentencing error" in applying the 30-year mandatory minimum required for a violation of § 924(c)(1)(B)(ii) involving the possession of a "destructive device." Mr. Hough was found guilty under this subsection for possession of a firearm during a drug trafficking crime ("Count 3"). According to Mr. Hough, the application of the 30-year sentence at Count 3 violated the requirements of *United States v. O'Brien*. 560 U.S.

---

[4] Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, may move the court which imposed the sentence to vacate, set aside or correct the sentence." *Id.* As such, § 2255 serves as a vehicle for federal prisoners to collaterally attack the constitutionality of their sentences.

218 (2010). In that case, the Supreme Court concluded that, in order to apply a statutory sentencing enhancement after a conviction for the use or carrying of a firearm in relation to a crime of violence or drug trafficking crime, the facts supporting the enhancement constituted an element of the offense to be proven to the jury beyond a reasonable doubt.[5] *Id.* at 230. Here, the sentencing Court applied the 30-year mandatory sentence at Count 3, finding that Mr. Hough had been in possession of a "destructive device" during his commission of the drug trafficking crime. Mr. Hough's argument is that, in violation of *O'Brien*, the jury never found his possession of a destructive device beyond a reasonable doubt.

Before entertaining the merits of Mr. Hough's claim, the Court must first address several procedural issues that impact the disposition of this claim. Those issues are whether Mr. Hough's claim is timely under the appropriate statute of limitations; whether his second or successive claim complies with the required procedures for such claims; and whether the claim is procedurally defaulted. Only after clearing each of these hurdles would the Court be permitted to evaluate the merits of the claim. As set forth below, while Mr. Hough can overcome procedural default, the claim is barred under the applicable statute of limitations as well as AEDPA's procedural and substantive limitations on second or successive claims. As a result, Mr. Hough's *O'Brien* claim is procedurally barred, and for the reasons noted below, would appear to fail on the merits in any event.

---

[5] 18 U.S.C. § 924(c)(1) provides that "[w]homever, during and in relation to any crime of violence or drug trafficking crime…, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle [or a] short-barreled shotgun to imprisonment for ten years, and if the firearm is a machine gun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years…"

### 1.  Timeliness

Under § 2255(f), *habeas* petitions are subject to a one-year statute of limitations, running from the latest of several dates. In Mr. Hough's case, the relevant date is the later of either 1) the date on which the judgment of conviction becomes final or 2) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. § 2255(f)(1), (3).[6] The first question the Court must address, then, is which date applies to Mr. Hough's petition.

Mr. Hough argues that the relevant date is the date of the Court's amended judgment of sentencing on April 6, 2018, (ECF No. 190), such that Mr. Hough's petition filed on March 7, 2019 (postmarked from prison on March 4, 2019, ECF No. 193-1) falls within the one-year statute of limitations. This argument, however, relies on the Court having to conclude that Mr. Hough's resentencing constituted a new final judgment effectively resetting the habeas clock. By contrast, the Government argues that the appropriate date is the date of the Supreme Court's decision in *O'Brien* on May 24, 2010 such that Mr. Hough's claim is time-barred under § 2255(f)(3).

Mr. Hough argues that the resentencing should count as a renewed final judgment under *Magwood v. Patterson*, 561 U.S. 320 (2010). The specific issue in *Magwood* was whether a petitioner's second-in-time § 2254[7] petition was "second or successive" and thus barred under § 2244(b), not whether the petition was timely under the statute of limitations. The Supreme Court

---

[6] The other dates that § 2255(f) recognizes as impacting the timeliness of § 2255 petitions are "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action" and "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." § 2255(f)(2), (4). Neither of these scenarios applies to Mr. Hough's Motion.

[7] While the petitioner in *Magwood* filed his *habeas* petition under § 2254, a panel of the Third Circuit, citing authority from the Second Circuit, has recognized *Magwood*'s applicability in the § 2255 context. *See Norwood v. United States*, 472 F. App'x 113, 118 n.4 (3d Cir. 2012) (accepting the Second Circuit's holding in *Johnson v. United States*, 623 F.3d 41, 45–46 (2d Cir. 2010), that *Magwood* applies to § 2255 proceedings).

held that "where… there is a new judgment between [] two habeas petitions, … an application challenging the resulting new judgment is not second or successive at all." *Id.* at 341-42 (internal quotations omitted).

It is an unsettled question whether *Magwood* applies to the timeliness of a petition.[8] Even assuming that *Magwood* stands for the proposition that a new judgment between *habeas* petitions restarts the statute of limitations, Third Circuit precedent makes it plain that Mr. Hough's resentencing was not a new judgment as to Count 3. In *Romansky v. Superintendent Greene SCI*, the Third Circuit held that "where some but not all counts of conviction are disturbed on appeal or in post-conviction proceedings, the defendant's eventual resentencing is [not] a new judgment as to the undisturbed counts of conviction," including the undisturbed sentences at those counts.[9] 933 F.3d 293, 300 (3d Cir. 2019). In Mr. Hough's case, while the sentences at Counts 1, 2, and 4 were amended by the resentencing, the sentence at Count 3 was not. As such, *Romansky* squarely directs this Court to conclude that Mr. Hough's resentencing was not a renewed judgment as to Count 3.

Mr. Hough argues that, despite the Circuit's holding in *Romansky*, the resentencing court undertook a *de novo* resentencing such that the new sentence at Counts 1, 2, and 4 constituted a new judgment as to Count 3 as well.[10] It is true that the *Romansky* court qualified its holding by

---

[8] At least one district court has declined to apply *Magwood*'s holding regarding second or successive petitions to questions of timeliness of § 2255 petitions. *See Fermin v. United States*, 859 F. Supp. 2d 590, 598–99 (E.D.N.Y. 2012) ("[S]everal reasons caution against importing the Second Circuit's reasoning [based on *Magwood*] as to the success[ive] petition inquiry into the timeliness inquiry. . . . [For one,] the successiveness and timeliness inquiries are aimed at fundamentally different questions: the limitations problem asks, 'are these claims to stale?' while the 'second or successive' problem asks 'are these claims repetitive?' Accordingly, the standards applied to each inquiry are different as well."). The Third Circuit has not to date addressed *Magwood*'s impact, if any, on timeliness under § 2255(f)(1).

[9] The petitioner in *Romansky*, like Mr. Hough, used *Magwood* to argue both that his petition was timely and was not second or successive, but the Third Circuit did not explicitly conclude in *Romansky* that *Magwood* applies to questions of timeliness. *See* 933 F.3d at 299–300.

[10] *See* ECF No. 241, at 15–19 (asserting that Mr. Hough's resentencing was *de novo* because this Court "vacated the Judgment of Sentence from 2005 and resentenced," applying both *Johnson* and the Fair Sentencing Act to reduce Mr. Hough's sentences at Counts 1, 2, and 4, and because "the sentencing enhancement as to [18 U.S.C. §] 924(c)(1)(A)

noting that "[p]otentially the result could be different in a court system using the 'sentencing package' doctrine, where a trial court will undertake a *de novo* resentencing as to all counts of conviction if any count is vacated . . . , under the theory that the sentencing judge would 'craft a disposition in which the sentences on the various counts form part of an overall plan.'" *Id.* (quoting *United States v. Miller*, 594 F.3d 172, 180 (3d Cir. 2010)). But not all cases involving multicount convictions warrant the application of the sentencing package doctrine on remand from an appeal or in post-conviction proceedings; rather, "the sentencing package doctrine should be confined to cases in which the sentences on the underlying counts were *interdependent*." *Miller*, 594 F.3d at 180; *see United States v. Ciavarella*, 481 F. Supp. 3d 399, 408–09 (M.D. Pa. 2020) (applying Third Circuit precedent to conclude that "there must be some obvious link between the vacated counts and the sentence on the counts that remain" for the sentencing package doctrine to apply). And even if this Court were to conclude that an application of this doctrine somehow impacts the Third Circuit's analysis in *Romansky*—which the Circuit itself declined to make certain—the reality is that this Court did not, nor was it required to, conduct a *de novo* resentencing in 2018.

An application of the sentencing package doctrine requires that the sentences on the underlying counts be interdependent. Here, while the *conduct* charged at Counts 1, 2, and 3 was plainly related, the *sentences* at those counts were not: the sentence that Mr. Hough received at Count 3 resulted from the type of firearm Mr. Hough possessed during the commission of a drug trafficking crime, while the sentences at Counts 1 and 2 resulted from Mr. Hough's act of selling and distributing crack cocaine. Had Mr. Hough been resentenced because he had challenged the legality of his underlying convictions, the Court may have been required to revisit the conviction and sentence imposed at Count 3. But the reason for the resentencing was Mr. Hough's successful

_____

in Count 3 is [ ] clearly interdependent with the sentences at Mr. Hough's other counts such that it should have been considered in a full resentencing").)

challenge to the *length*—not the *fact*—of his sentences at Counts 1, 2, and 4[11] based on a change in the law that reduced the mandatory minimum sentences at those counts. In other words, the 2018 resentencing did not alter the jury's findings as to Mr. Hough's guilt as to any of the counts, nor as to the type of firearm that he possessed during the commission of the crime. Thus, a *de novo* resentencing at Count 3 was not "necessary in order to ensure that the punishment fits both the crime and criminal." *Miller*, 594 F.3d at 180.[12]

In sum, because the amended judgment of sentence upon resentencing docketed on April 6, 2018 left Mr. Hough's sentence at Count 3 undisturbed, it did not constitute a new judgment as to Count 3. The relevant date pursuant to § 2255(f)(1), or the date on which the judgment of conviction as to Count 3 became final, is thus July 15, 2005, a date far outside of the one-year statute of limitations. The latest "start date" available to Mr. Hough, then, is May 24, 2010, the date on which *O'Brien* was decided. Mr. Hough does not contest that this date also falls outside the one-year statute of limitations for his petition filed in 2019. Therefore, because Mr. Hough's

---

[11] Mr. Hough's sentence at Count 5 was not changed via the resentencing agreement given that his original sentence at Count 5 was 120 months. Following his resentencing, Mr. Hough's 120-month sentence at Count 5 simply runs concurrently to his concurrent 120-month sentences at Counts 1, 2, and 4.

[12] In opposing Mr. Hough's argument that his 2018 resentencing constitutes a new judgment under *Magwood*, the Government cites to *Williams v. Lamas*, No. 2:13cv1171, 2014 WL 1819588 (W.D. Pa. May 7, 2014), a decision from this District that the Government asserts rejected an argument identical to Mr. Hough's. (ECF No. 266, at 10 n.3.) While *Williams* does not discuss the sentencing package doctrine, it is a useful case for characterizing what did and did not occur at Mr. Hough's resentencing in 2018. In *Williams*, the petitioner's sentence had been modified in 2013 to reflect time credit that the petitioner had received, and he argued that that modification constituted a new judgment between two *habeas* petitions such that his second-in-time petition was not second or successive. 2014 WL 1819588, at *2–3. Judge Cercone reasoned that, because "[t]here [was] nothing to indicate that the 2013 modification of his sentence . . . affected the finality of his judgment of sentence, . . . the modification . . . did not result in a new, intervening judgment under *Magwood*." *Id.* at *4. Similarly, here, the record establishes that Mr. Hough's resentencing at Counts 1, 2, and 4 did not affect the finality of his judgment of sentence at Count 3. In the Second Amended Judgment at ECF No. 190, Counts 1 and 2 appear on the first page as the only counts being modified by the amended judgment; Counts 3, 4, and 5 appear on the next page as "additional counts of conviction." (ECF No. 90, p. 1-2). The clear delineation between the counts that were affected by the resentencing and the counts that were not reinforces the Court's conclusion that a *de novo* resentencing did not take place in this case.

petition is not timely under any of the provisions of § 2255(f), the statute of limitations bars his

claim as to the legality of his 360-month sentence at Count 3.

### 2. Procedural and Substantive Limitations on Second or Successive Claims under AEDPA

Even if Mr. Hough's *O'Brien* claim were not barred by the one-year statute of limitations—

which it is—the claim would nevertheless be barred by as a second or successive claim under the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2255 imposes

procedural and substantive limitations on "second or successive" petitions, requiring a petitioner

who files a second or successive *habeas* motion to seek certification by a panel of the appropriate

court of appeals declaring that the motion contains either 1) newly discovered evidence or 2) a

new rule of constitutional law. § 2255(h) (requiring such certification as provided in § 2244).

Given that Mr. Hough did not obtain such certification from the Third Circuit,[13] Mr. Hough's

*O'Brien* claim[14] is barred if this Court determines that it is a second or successive petition.

Mr. Hough, once again relying on *Magwood*, argues that his 2018 resentencing constitutes

a new judgment that allows him to "challenge his original sentence . . . without resorting to the

restrictions governing second or successive petitions." (ECF No. 241, 25). But as discussed at

length above, the resentencing did not constitute a renewed judgment as to Count 3. So while

*Magwood* did hold that a second-in-time *habeas* petition attacking, for the first time, a new

judgment entered after a prior petition is not a "second or successive" petition and thus not subject

---

[13] Mr. Hough did apply for such certification with respect to his second *habeas* petition, which was granted on the basis that the Supreme Court's decision in *Beckles v. United States*, 580 U.S. 256 (2017), constituted a new rule of constitutional law applicable to Mr. Hough's case. (ECF No. 173). With respect to the instant petition—Mr. Hough's now third under § 2255—no such application was made.

[14] As will be discussed *infra*, Mr. Hough's claim of ineffective assistance of counsel is not a second or successive claim because the pending motion is the first petition raising the claim and, more importantly, is the first petition that could conceivably challenge the performance of Mr. Hough's counsel because it concerns the conduct of his counsel appointed to assist him in adjudicating his 2016 *habeas* petition and resultant resentencing.

to the requirements of § 2244, 561 U.S. at 341-32, the Third Circuit in *Romansky* made clear that, where some but not all counts of conviction are disturbed on appeal or in post-conviction proceedings, the defendant's eventual resentencing does not constitute a new judgment as to the undisturbed counts of conviction. 933 F.3d at 300. As such, Mr. Hough's resentencing, which left the conviction and sentence at Count 3 undisturbed, is not a new judgment that relieves Mr. Hough of the requirements for second or successive *habeas* petitions.

Nor can Mr. Hough rely on broader principles related to second or successive petitions to argue that his petition is not second or successive or to avoid the requirements for such petitions. While neither § 2244 or § 2255 explicitly defines the term "second or successive," the Third Circuit held in *Benchoff v. Colleran* that the pre-AEDPA abuse of the writ doctrine "retains viability as a means of determining when a petition should be deemed 'second or successive' under the statute." 404 F.3d at 816–17. "Under [the abuse of the writ] doctrine, a petition would be considered an abuse of the writ, *inter alia*, where the subsequent petition raised a habeas claim which could have been raised in an earlier petition and there was no legitimate excuse for failure to do so." *Id.* at 816 (citation omitted). Here, Mr. Hough has raised, now in his third *habeas* petition, a claim that he could have raised in his second petition filed in 2016.[15] And Mr. Hough presents no cognizable excuse for failing to do so. As a result, Mr. Hough's argument that his petition should not be considered second or successive has no merit.

Because Mr. Hough's petition is his third, and his second in which he could have raised his *O'Brien* claim, it is a "second or successive" petition that must meet AEDPA requirements. Mr. Hough's petition does not, because he failed to seek and receive pre-filing certification from

---

[15] Mr. Hough's claim as to Count 3 is based on the new rule of constitutional law announced in *O'Brien*, which was decided in 2010.

the Third Circuit. Mr. Hough's claim as to his sentence at Count 3 is thus barred both by the statute of limitations and by AEDPA's procedural requirements.

### 3. Procedural Default

The Government argues that Mr. Hough's *O'Brien* claim is procedurally defaulted, in addition to being barred by the statute of limitations and by AEDPA, because he failed to raise the alleged error at the time it occurred or appeal the judgment. But Mr. Hough can overcome procedural default due to his claim that counsel was ineffective in failing to appeal the resentencing judgment.

The procedural default doctrine requires that, when a petitioner has failed to raise an alleged error at the time it occurs or to appeal the judgment, the petitioner must demonstrate cause for such omissions and actual prejudice resulting from the omissions. *See United States v. Pelullo*, 399 F.3d 197, 220–21 (3d Cir. 2005) ("[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) cause excusing his double procedural default, and (2) actual prejudice resulting from the errors of which he complains.") (citing *United States v. Frady*, 456 U.S. 152, 167 (1982)) (internal quotation marks omitted); *United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993), *superseded by rule on other grounds* (holding that "*Frady*'s cause and prejudice standard applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed"). "Cause requires a showing of some external impediment preventing counsel from constructing or raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991), *superseded by AEDPA on other grounds* (internal quotation marks omitted). "Perhaps the most frequently asserted 'cause' for procedural default is ineffective assistance of counsel." *Riley v. Taylor*, 277 F.3d 261, 303 (3d Cir. 2001). "Actual prejudice means not merely that the errors . . . created a

*possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (internal quotation marks omitted).

Mr. Hough acknowledges that neither he nor his counsel raised his present *O'Brien* claim at the 2018 resentencing or appealed the resentencing on that (or any) ground. However, he asserts that he can show cause for the procedural default—specifically, that his counsel rendered ineffective assistance at resentencing and by failing to appeal the resentencing judgment—and that the default caused actual prejudice to him by allowing his 30-year minimum sentence at Count 3 to stand. (ECF No. 241, p. 26–30).

Assuming Mr. Hough had the right to counsel at his resentencing,[16] Mr. Hough's claim of ineffective assistance of counsel—at least as to his counsel's alleged failure to appeal the

---

[16] The Government argues in its briefing that there is no constitutional right to counsel at a resentencing hearing and that Mr. Hough therefore lacks the ability to claim ineffective assistance of counsel at that stage. (ECF No. 266, p. 12). "The Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the proceedings." *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (internal quotations omitted). Critical stages of a prosecution are "those when a defendant faces significant consequences and the guiding hand of counsel is necessary to assure a meaningful defense." *Richardson v. Superintendent Coal Township SCI*, 905 F.3d 750, 764-65 (3d Cir. 2018) (internal quotations omitted).

The Third Circuit has not spoken specifically to whether a resentencing hearing resulting from a decision in a § 2255 proceeding constitutes a critical stage to which the Sixth Amendment applies. However, given the above standard for identifying the proceedings to which the right to counsel applies, this Court has no difficulty in concluding that a resentencing hearing ordinarily does constitute a critical stage to which the right to counsel attaches. Supreme Court precedent makes plain that a sentencing hearing is a critical stage. *Gardner v. Florida*, 430 U.S. 349, 358 (1977). And while there are differences between a sentencing hearing and a resentencing pursuant to § 2244 or § 2255, the Supreme Court recently issued an Opinion drawing close parallels between initial sentencings and sentencing modifications at a resentencing and confirming the broad sweep of information that the resentencing court may consider. *Concepcion v. United States*, 597 U.S. 481, 482 (2022) ("The discretion federal judges hold at initial sentencings also characterizes sentencing modification hearings.").

The Court concludes that, because the resentencing hearing here involved significant questions of law and fact with which the guiding hand of counsel would be necessary to adequately address, and because such hearings involve potentially significant changes to a defendant's sentence (which did happen here, where the resentencing judge accepted the agreement of the parties that resulted in a ten year reduction in Mr. Hugh's sentence from 50 to 40 years in federal prison), such hearings would generally constitute a critical stage at which the right to counsel is guaranteed, and the Court concludes that the resentencing hearing in this case met that mark. Mr. Hough was represented by counsel at that hearing, and he had a right to such representation.

resentencing judgment[17]—allows him to avoid procedural default on his claim as to his sentence at Count 3. As will be discussed *infra*, Mr. Hough asserts that he can  show that his attorney was *per se* ineffective in failing to appeal the resentencing judgment despite a direct request that she do so; if so, it would be inconclusive whether Mr. Hough is "entitled to no relief," *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020), and Mr. Hough would potentially  have "cause" as to the failure to file an appeal of the resentencing judgment.

All of this analysis aside, however, given that Mr. Hough's *O'Brien* claim is barred by the statute of limitations and as an unauthorized second or successive claim, any ability for him to overcome procedural default does not impact whether his claim can survive: it cannot.

### 4.  Substantive Merit of the *O'Brien* Claim

Finally, for the purpose of completeness, the Court will briefly address the merits of Mr. Hough's claim as to the legality of his 360-month sentence at Count 3. Mr. Hough argues that the sentencing Court committed a "sentencing error" by applying an enhanced sentence at Count 3 without the Government having first proven the elements necessary for the application of that enhancement to the jury beyond a reasonable doubt.

As previously discussed,[18] the Supreme Court held in *United States v. O'Brien* that the increased sentences available under § 924(c)(1)(B)(ii) for the possession of especially destructive or dangerous firearms during a drug trafficking crime constitute elements of the crime itself that

---

[17] Mr. Hough cannot avoid procedural default on his claim that Ms. Levin failed to raise a challenge to the 360-month sentence at Count 3 because, as cited above, a defendant citing ineffective assistance of counsel as a cause for procedural default must show actual prejudice such that the ineffective assistance created some actual and substantial disadvantage. *Frady*, 456 U.S. at 170. As previously discussed, Mr. Hough's claim as to this count was, at the time of the resentencing, already barred by the statute of limitations for § 2255 claims, such that Ms. Levin's alleged failure to raise a challenge did not actually disadvantage Mr. Hough; any such argument would have failed given the procedural bar.

[18] *See* p. 6. *supra*.

must be proven by a jury, rather than simply being sentencing factors that can be found by a judge at sentencing. 560 U.S. at 235. Mr. Hough's claim is that the sentencing Court improperly applied the 30-year sentence prescribed for the possession of a "destructive device" during the commission of a drug trafficking crime—as opposed to the 5-year base level sentence for possession of a firearm during such a crime—without the jury having found explicitly that a pipe bomb[19] constitutes a destructive device under the statutory provision, thus violating the mandate of *O'Brien*.

Under *O'Brien*, the Government must both charge in the indictment and prove to a factfinder beyond a reasonable doubt that a defendant possessed the specific type of firearm(s) that it alleges he or she possessed in order to apply the 30-year sentence under § 924(c)(1)(B)(ii). *See, e.g.*, *O'Brien*, 560 U.S. at 223, 236 (affirming the district court's conclusion that the government, in charging the defendant with violating § 924(c)(1)(B)(ii), was "required to charge in the indictment, and then prove to the jury, *that the Cobray [pistol that the defendant possessed] was a machine gun*" (emphasis added)); *United States v. Sheehan*, 838 F.3d 109, 118–21 (2d Cir. 2016) (rejecting the defendant's contention that "there was insufficient evidence to establish that his device was an 'explosive bomb' within the meaning of" § 921(a)(4)(A)(1), as required to convict him under § 924(c)(1)(B)(ii), concluding that the evidence was sufficient because *the government presented evidence that "the device could be detonated in some manner*," even if not in "its ordinary or intended manner" (emphasis added)). Here, then, it was the Government's duty to charge and then prove beyond a reasonable doubt that Mr. Hough possessed a "destructive device."

---

[19] Mr. Hough does not contest that the jury did find his possession of a pipe bomb during the commission of the crime beyond a reasonable doubt. Instead, he argues that the jury did not make a specific finding that a pipe bomb equals a destructive device under § 924(c)(1)(B)(ii).

The parties agree that the jury found that Mr. Hough possessed a pipe bomb during his commission of a drug trafficking crime. Where the parties differ, however, is on the question of whether the Government met its burden of proof in convincing the jury beyond a reasonable doubt that the pipe bomb constituted a "destructive device" under the statutory definition.[20] Mr. Hough argues that, because the jury was never instructed as to the definition of a "destructive device," it did not find that the pope bomb was a destructive device.

Mr. Hough is correct that the Government did not specifically charge, nor did the jury instructions explicitly list, the possession of a "destructive device" as an element of the crime charged at Count 3.[21] The problem with Mr. Hough's argument, however, is that the jury found Mr. Hough guilty beyond a reasonable doubt of possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d) in the very same verdict in which it found Mr. Hough guilty

---

[20] The applicable statutory definition appears at 18 U.S.C. § 921(a)(4) ("The term 'destructive device' means–(A) any explosive, incendiary, or poison gas–(i) bomb, (ii) grenade, (iii) rocket having a propellant charge of more than four ounces, (iv) missile having an explosive or incendiary charge of more than one-quarter ounce, (v) mine, or (vi) device similar to any of the devices described in these preceding clauses; (B) any type of weapon . . . by whatever name known which will, or which may be readily converted to, expel a projective by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and (C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.")

[21] The Superseding Indictment charged at Count 3 "possession of a firearm during a drug trafficking crime on or about March 20, 2003" in violation of "18 U.S.C. §§ 924(c)(1)(A) & 924(c)(1)(B)(ii)." (Superseding Indictment Memorandum, ECF No. 273-2, p. 1-2). The Government's Superseding Indictment Memorandum described the elements of the offenses charged at Count 3 as follows: "In order for the crime of possession of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), to be established, the government must prove all of the following essential elements beyond a reasonable doubt: 1. That the defendant committed the drug trafficking crime charged in Counts One and Two of the Superseding Indictment. 2. That the defendant knowingly possessed a firearm in furtherance of said drug trafficking crime." (*Id.* at 3-4). The charge to the jury reiterated those "2 essential elements" described in the Superseding Indictment Memorandum that "the government must prove . . . beyond a reasonable doubt" to sustain its burden of proof at Count 3. (ECF No. 136, p. 225–26.) The jury charge did not add any elements of the offense at Count 3 beyond those listed in the Superseding Indictment Memorandum. (*See id.*). The charge to the jury as to Count 3 stated the following: "The term, firearm, means any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm, muffler, or firearm silencer; or any destructive device." (*Id.* at 226). The jury form as to Count 3 specifically required the jury, if it found Mr. Hough guilty of Count 3, to indicate which firearms it "specifically and unanimously f[ound] . . . were possessed by the Defendant in furtherance of a drug trafficking offense as charged in Count 1 and/or Count 2," and the jury checked "yes" as to four firearms listed in the form, one of which was a "pipe bomb." (ECF Nos. 241, at 5; 266, at 20.)

under § 924(c)(1)(B)(ii). The jury charge for a violation of § 5861(d) presented to the jury in this case stated as an element of the offense that "the defendant knew the characteristics of the item that he possessed, in this case, a pipe bomb. That is, the defendant knew that he possessed an explosive, incendiary, or gas bomb." (ECF No. 231). This is the same verbiage as used in 921(a)(4) as to what constitutes a "destructive device", so in finding Mr. Hough guilty of violating § 5851(d), charged in the Superseding Indictment at Count 5, the jury necessarily was finding this element as defined in 921(a)(4)—that Mr. Hough knowingly possessed a pipe bomb, and which is a destructive device—beyond a reasonable doubt. So, given that the jury found that Mr. Hough's possession of a pipe bomb constituted possession of an unregistered destructive device, and given that the jury found that Mr. Hough possessed a pipe bomb during the commission of a drug trafficking crime, it is necessarily true that the jury found Mr. Hough's possession of a destructive device—the pipe bomb—during the commission of a drug trafficking crime beyond a reasonable doubt.

Thus, the Court concludes that the Government met its burden in proving Mr. Hough's possession of a destructive device during the commission of a drug trafficking crime beyond a reasonable doubt.

**B. Because failure to file an appeal upon a defendant's request is *per se* ineffective assistance of counsel, and the record is sufficiently uncertain as to whether Mr. Hough has proven that he asked Ms. Levin to appeal his sentence at Count 3, the Court requires further record development in order to determine the merit of Mr. Hough's claim in that specific regard.**

Mr. Hough claims that he was denied effective assistance of counsel by his appointed attorney at his resentencing in violation of the Sixth Amendment. Mr. Hough's ineffective assistance claim stems from his alleged request that Ms. Levin file an appeal on his behalf

contesting the validity of his 360-month sentence at Count 3 of the superseding indictment.[22]

According to Mr. Hough, he specifically asked his resentencing counsel to file an appeal as to this

issue, and thus her failure to do so constituted *per se* ineffective assistance. *Simon v. Gov't of the*

*Virgin Islands*, 929 F.3d 118, 132 (3d Cir. 2019) (citing *Solis v. United States*, 252 F.3d 289, 293-

94 (3d Cir. 2001)) (holding that counsel's failure to file an appeal despite a defendant's instruction

to do so constitutes *per se* ineffectiveness without the need for a showing of prejudice). Given that

no appeal was filed, if Mr. Hough did indeed ask Ms. Levin to file an appeal, and if Ms. Levin

knew about that request, the failure to file an appeal would constitute ineffective assistance of

counsel such that Mr. Hough would be entitled to relief under § 2255.[23]

In resolving a § 2255 motion, "[a] district court must hold an evidentiary hearing '[u]nless

the motion and the files and records of the case *conclusively show* that the prisoner is entitled to

no relief.'" *Scripps*, 961 F.3d at 631–32 (quoting *United States v. McCoy*, 410 F.3d 124, 131 (3d

Cir. 2005) (quoting 28 U.S.C. § 2255(b))). A "District Court's decision not to hold an evidentiary

hearing will be an abuse of discretion unless it can be conclusively shown" that the defendant is

not entitled to relief on the grounds sought. *Id*. (quoting *United States v. Lilly*, 536 F.3d 190, 195

(3d Cir. 2008)). Having initially determined that the files and records of this case were not so

---

[22] Mr. Hough also claims that Ms. Levin was ineffective in failing to raise a challenge to the 360-month sentence at Count 3 under *O'Brien*. As previously discussed, however, this claim was procedurally barred by the statute of limitations under § 2255 and by AEDPA's restrictions on second or successive petitions. *See* n. 16, *supra*. As such, Ms. Levin was not required to raise this argument as doing so would have been frivolous. *See United States v. Turner*, 677 F.3d 570, 577 (3d Cir. 2012) (holding that counsel is not ineffective for failing to raise frivolous or meritless claims). Even if Mr. Hough had explicitly asked Ms. Levin to raise this claim, her decision not to do so would have been a well-reasoned strategic decision given the fact that the argument would have inevitably failed. As to this argument, then, the Court concludes that Ms. Levin's decision not to raise the *O'Brien* claim at the resentencing was not ineffective assistance of counsel.

[23] To be clear, if Mr. Hough's ineffective assistance claim were successful, the relief available would not be the vacatur of his sentence or conviction; instead, because the claim stems from counsel's alleged failure to timely file an appeal of his resentencing judgment, the appropriate relief would be to reset the appeal clock via an appropriate Order and then allow Mr. Hough time to file such an appeal within the new "window" created by such an order. Such would be the case even if, as noted above, this Court concludes that any such appeal would be without a valid basis.

conclusive as to Mr. Hough's ineffective assistance claim, the Court held such an evidentiary hearing. One purpose of that hearing was to determine whether Mr. Hough had asked Ms. Levin to file an appeal and, if so, whether Ms. Levin was aware of that request.

The Court concludes both that the record from that evidentiary hearing is not sufficiently conclusive as to either such question, and that the record to date demonstrates that there may be a basis for that record to be made more complete. Mr. Hough asserted that he asked Ms. Levin to file an appeal of the resentencing judgment, both at the hearing itself and via letters he sent her after the resentencing hearing. (ECF No. 331, 66:17-18) ("And when she didn't raise [the *O'Brien* challenge], that's when I told her to file my appeal, the appeal to Count 3."); (*Id.* at 12:11-13) ("That was in response to the letters I wrote her in response to those two letters after the resentencing. Because that would show when I asked her to do the appeal"). By contrast, Ms. Levin claimed that she did not recall Mr. Hough asking her to file an appeal or sending a letter to her requesting she appeal the resentencing judgment. (ECF No. 331, 27:16) ("I don't remember discussing [Mr. Hough's] appellate rights with him."); (*Id.* at 27:20) ("I don't recall Mr. Hough ever instructing me to file a notice."); (*Id.* at 28:2-6) ("I believe those to be the entire file of the letters that were addressed to me. Certainly he may have written to other people in my office. Those were the entirety of the letters I had available to me electronically at the moment that you requested them."); (*Id.* at 47:14) ("I do not recall him asking me to appeal the sentence at Count 3.").

The Government argues that a defendant claiming ineffective assistance of counsel concerning a requested appeal has to "present some credible, non-conclusory evidence" that he actually asked counsel to file an appeal, *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), and that offering "she said, he said" testimony in the absence of supporting evidence is

insufficient for a finding of *per se* ineffectiveness. *Kennebek v. United States*, 497 F. App'x 670, 672 (8th Cir. 2013); *see also United States v. Clancy*, 2021 WL 6037583, at *9 (holding that, where counsel credibly testified that he had not heard the defendant request an appeal, counsel's failure to file an appeal was not ineffective assistance); *Krohmer v. American Airlines, Inc.*, No. 2:17-01239, 2021 WL 3828150, at *14 (W.D. Pa. Aug. 27, 2021) (finding that "he said, she said" evidence did not give rise to an inference of discrimination in a case alleging ADA violations).[24]

It is true that Mr. Hough has not provided any letter from Mr. Hough to Ms. Levin asking her to file an appeal on his behalf nor any responsive letter that would demonstrate such a written request to appeal had been made by Mr. Hough, and that, as a result, the only evidence the Court has to evaluate on this point is the oral statements of Mr. Hough versus the referenced testimony of Ms. Levin. Mr. Hough's words, however, are—at least in phrasing—stated in a somewhat more definitive way than those of Ms. Levin. While Mr. Hough insists that he asked Ms. Levin to file an appeal, both in-person at the resentencing hearing and in writing in multiple letters addressed to her after the resentencing, Ms. Levin insists that she does not recall Mr. Hough asking her to file an appeal and that she does not remember receiving any letters requesting she do so.[25]

Given the substance of Ms. Levin's testimony on this point, the Court concludes that it is at least plausible that the record from the evidentiary hearing is insufficiently definitive for the

---

[24] The Government makes an additional argument in its briefing that, even if Mr. Hough had asked Ms. Levin to file an appeal and she failed to do so, that would not constitute per se ineffectiveness under *United States v. Turner* because counsel is not required to pursue frivolous or meritless claims on appeal. 677 F.3d at 577. What the Government fails to parse, however, is that this is the rule for pursuing frivolous *claims* on appeal; the failure to file an appeal altogether despite a defendant's instruction to do so constitutes *per se* ineffectiveness without need for a showing of prejudice. *Simon*, 929 F.3d at 132. Here, Mr. Hough claims that Ms. Levin failed to file an appeal in the first place, something that, if true, would constitute *per se* ineffective assistance of counsel.

[25] This is in contrast to the facts in *Clancy*, in which the Court found that the defendant, Mr. Clancy, was credible in asserting that he had leaned towards his counsel during a hearing and said, "we're appealing, right" but that defense counsel was also credible in testifying that he did not hear Mr. Clancy's statement. *Clancy*, 2021 WL 6037583, at *4. In that case, the Court affirmatively found that defense counsel did not hear his client, such that he was not aware of any request to file an appeal. *Id.*

22

Court to resolve this issue, as there may be other relevant correspondence on this specific point in the records of Ms. Levin's office. And while Mr. Hough has thus far failed to provide the Court with any letters or other writings demonstrating that he asked resentencing counsel to file an appeal of the resentencing judgment, it is not wholly implausible, although Mr. Hough does appear to keep (and then submit to the Court) copies of any relevant papers important to him,[26] that he did send such letters but does not have copies of them or documentary proof that he did so.

The Court therefore directs the following. Ms. Levin is directed to file on the docket either 1) a notice identifying (by date and description of content) every piece of correspondence (in any format) she *or her office* received from or sent to Mr. Hough after the resentencing judgment was entered on April 6, 2018 relating in any way to that resentencing hearing and including any reference to an appeal, or 2) a notice stating that no additional such correspondence exists. The Court directs all such filings be made within thirty (30) days of the date of this Opinion. The Court will thereafter determine what further proceedings, if any, are appropriate.

The Court believes that this relief adequately balances the Defendant's interests and the interests of justice with those of judicial efficiency and sound reasoning. And to be clear, by this directive, the Court makes no ultimate findings or conclusions on the merits of this specific claim advanced by Mr. Hough, nor as to the credibility of any witness. Further, the Court recognizes and confirms the obligation of the parties themselves, including Mr. Hough, to advance the evidence necessary to prevail on any claim or defense. The Court nonetheless directs this specific supplemental filing based on the content of the testimony developed to date in this proceeding, and as a natural corollary to that testimony. Thus, the Court concludes that, for the sake of logical

---

[26] *See*, *e.g.*, ECF No. 273, Ex. E (composed of copies of three separate letters from Attorney Levin to Mr. Hough spanning from October 4, 2017 through December 7, 2018); ECF No. 294 (attaching as exhibits numerous medical and institutional documents).

23

completeness, this directive is appropriate in these specific circumstances. Once the aforementioned notice(s) are filed, the Court will further consider whether Mr. Hough is entitled to relief on his claim of ineffective assistance of counsel.

## II.     Motion for Bail Pending Disposition of the Motion to Vacate

Mr. Hough has moved for bail pending the resolution of his habeas motion. (ECF No. 332). A District Court has the authority to grant bail pending the disposition of a habeas petition, but that authority is a narrow one. *Lucas v. Hadden*, 790 F.2d 365, 366-67. "[B]ail pending post-conviction habeas corpus review [is] available only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992) (quoting *Calley v. Calloway*, 496 F.2d 701, 702 (5th Cir. 1974)) (internal quotations omitted). Thus, in order to grant Mr. Hough's motion, the Court would have to find both that 1) Mr. Hough has a high probability of succeeding on at least one of his underlying constitutional claims and 2) this case presents exceptional circumstances making bail pending habeas review necessary. The Court concludes that neither factor exists in this case.

### A.  Mr. Hough has not demonstrated that his constitutional claims have a high probability of success.

As discussed at length in the preceding sections, Mr. Hough asserts two bases upon which he should be granted relief under § 2255: the alleged unconstitutionality of his 360-month sentence at Count 3 and the claimed ineffectiveness of his counsel in failing to file an appeal of the resentencing judgment. The Court has already concluded that Mr. Hough's first claim has no merit, as it is procedurally barred both by the statute of limitations under § 2255 and by the procedural safeguards embedded within AEDPA. And the Court has laid out above why it concludes that it is

24

highly unlikely that Mr. Hough could prevail on the merits of that claim, either. Thus, the only remaining issue that could support Mr. Hough's motion for bail is his ineffective assistance of counsel claim as to the alleged request for an appeal, a claim that would not result in the vacation of his conviction or sentence, but instead in the generation of a renewed time window in which Mr. Hugh could appeal his resentencing.

The Third Circuit has generally declined to grant motions for release pending resolution of a habeas petition absent a strong showing of likelihood to succeed on the merits. *See Pellulo v. United States*, 487 Fed. Appx. 1, 3 (3d Cir. 2012); *Armstrong v. Grondolsky*, 290 Fed. Appx. 451, 453 (3d Cir. 2008); *United States v. Smith*, 835 F.2d 1048, 1051 (3d Cir. 1987). The Court concludes that Mr. Hough has similarly failed to make such a showing here. Too many outstanding questions remain—whether Ms. Levin's office actually received additional letters, whether those letters contained a request to appeal the resentencing judgment, whether Ms. Levin has or ever had or was aware of those letters or any evidence of additional such letters—to conclude that Mr. Hough has a high probability of succeeding on his claim of ineffective assistance of counsel. And, as is noted above, even if such claim were to be found to be meritorious, the remedy in this Court would not be Mr. Hough's release, but only the entry of an order that would rejuvenate Mr. Hough's time window to appeal his resentencing.

Mr. Hough is not entitled to bail pending resolution of his *habeas* motion. At this point, while the Court concludes that limited further development of the record is appropriate, as things now stand, the record does not so substantially point to an ultimate victory on Mr. Hough's part that bail pending the disposition of further proceedings is the correct course.

**B. Mr. Hough has failed to demonstrate extraordinary or exceptional circumstances such that the grant of bail is necessary to make the *habeas* remedy effective.**

Even if Mr. Hough's petition had presented evidence sufficient to conclude that he has a significant likelihood of success on his ineffective assistance claim, Mr. Hough's petition fails to present any facts demonstrating exceptional circumstances that would make his release on bail pending review of his habeas petition necessary. A "preliminary grant of bail is an exceptional form of relief in a habeas corpus proceeding" that requires a factual finding of "extraordinary circumstances" by a reviewing court. *Lucas*, 790 F.2d at 367. "Very few cases have presented extraordinary circumstances, and those have seem [sic] to be limited to situations involving very poor health or the impending completion of the prisoner's sentence." *Landano*, 970 F.2d at 1239 (citing *Johnston v. Marsh*, 227 F.2d 528, 529 (3d Cir. 1955) (finding that the District Court had power to admit a prisoner to bail where he was an advanced diabetic rapidly progressing toward total blindness and where he was released to a hospital for immediate treatment)). In fact, in the Third Circuit, "thus far… extraordinary circumstances have been found only in cases of ill health or the near-term completion of a sentence." *United States v. Stewart*, 127 F. Supp. 2d 670, 672 (E.D. Pa. 2001).

Here, Mr. Hough alleges no facts demonstrating ill health. He has 22 years left on his 40-year sentence imposed on July 15, 2005. (ECF No. 190). The only ground Mr. Hough presents for a finding of exceptional circumstances is his claim that he has overserved his sentence due to an alleged error in sentencing which resulted in the Court's application of a 30-year mandatory minimum at Count 3. (ECF No. 332, p. 1). As the Court has already determined, however, no such sentencing error occurred. And even if it had, arguments as to the excessiveness of an individual's sentence are not the type of ground upon which courts in this Circuit have ordinarily found extraordinary circumstances to be present. *See Landano*, 970 F.2d at 1239; *Stewart*, 127 F. Supp

at 672. Given that both a highly meritorious constitutional claim and extraordinary circumstances are required in order to grant a motion for bail, Mr. Hough is not entitled to bail pending the resolution of his remaining claim for relief under § 2255.

## CONCLUSION

Mr. Hough's claim for relief in this Court as to his 360-month sentence at Count 3 is hereby DENIED. Because more information is needed to conclude that his claim of ineffective assistance as to his asserted request for an appeal of his resentencing judgment to be filed does or does not have merit, his § 2255 petition remains, in part, "live" pending further development of the record as set forth above, but only as set forth above. As noted, however, even if Mr. Hough were successful as to that issue, the remedy would not be the vacation of his sentence by this Court, but only a renewed opportunity for Hough to appeal his resentencing. Finally, Mr. Hough's motion seeking bail pending the resolution of his § 2255 motion is DENIED.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Date:   March 6, 2024